# In the United States Court of Federal Claims

No. 21-1152

(Filed Under Seal: April 18, 2025)*

(Reissued: May 13, 2025)

* * * * * * * * * * * * * * * * *
\*
**ALISON STIEGLER,**          \*
                              \*
          Petitioner,   \*
                              \*
v.                            \*
                              \*
**SECRETARY OF HEALTH**       \*
**AND HUMAN SERVICES,**       \*
                              \*
          Respondent.   \*
                              \*
* * * * * * * * * * * * * * * * *

      *Courtney C. Jorgenson*, Siri & Glamstad, LLP, of Phoenix, AZ, for Petitioner,

      *Sarah C. Duncan*, Trial Attorney, with whom were *Debra A. Filteau Begley*, Senior Trial Attorney, *Heather L. Pearlman*, Deputy Director, *C. Salvatore D'Alessio*, Director, and *Brett A. Shumate*, Acting Assistant Attorney General, Torts Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Respondent.

### OPINION AND ORDER

**SOMERS**, Judge.

      Petitioner filed a motion for review challenging the chief special master's decision denying her entitlement to compensation for Postural Orthostatic Tachycardia Syndrome ("POTS") and Chronic Fatigue Syndrome ("CFS") allegedly caused by the Tetanus, Diphtheria, Acellular Pertussis ("Tdap") vaccine. *See Stiegler v. Sec'y of Health & Hum. Servs.*, No. 21-1152, 2024 WL 4678300 (Fed. Cl. Spec. Mstr. Oct. 10, 2024). Specifically, Petitioner contends that the chief special master's decision was not in accordance with law, because he dismissed her claim under Rule 12(b)(6) of the Rules of the U.S. Court of Federal Claims ("RCFC") and failed to abide by the legal standard for dismissal under that rule. Additionally, Petitioner asserts that the chief special master's denial of entitlement without allowing Petitioner to file expert reports

---

* On April 18, 2025, the Court issued this opinion and order under seal in accordance with Rule 18(b) of the Vaccine Rules (Appendix B) of the U.S. Court of Federal Claims. The Court provided the parties 14 days to proposed redactions. The parties did not propose any redactions, and, accordingly, the Court reissues this opinion in its original form with a few minor stylistic and typographical corrections.

to substantiate her claim constitutes an abuse of discretion.  Petitioner also seeks interim attorneys' fees.

As explained in greater detail below, the Court denies Petitioner's motion for review.  First, the chief special master did not dismiss Petitioner's claim pursuant to RCFC 12(b)(6), but instead denied entitlement due to Petitioner's failure to assert the causal theory necessary for an alleged "off-Table" injury.  In other words, the chief special master was not required to follow the legal standard for dismissal under RCFC 12(b)(6) because he did not dismiss Petitioner's claim pursuant to that rule.  Second, the chief special master's decision to deny entitlement without consideration of expert reports was not an abuse of discretion because the chief special master determined that the record was comprehensive and fully developed before doing so.  Finally, the Court remands to the chief special master Petitioner's motion for interim attorneys' fees for a reasonableness analysis in accordance with the instructions provided below.

## BACKGROUND

### A. Factual History

Petitioner received the Tdap vaccine at issue in this case on April 4, 2018.  ECF No. 1, ¶ 2.  However, Petitioner has an extensive relevant medical history dating to before her vaccination.  According to the medical records filed, Petitioner first went to the emergency room on October 9, 2015, complaining of shortness of breath, chest tightness, and increased stress at work.  *See* ECF No. 30-5 at 12.  She was diagnosed as having had a panic attack and prescribed medication to mitigate these symptoms.  *Id.* at 15.  About three months later, Petitioner presented again to the emergency room, complaining of almost daily abdominal pain she claims she had experienced continuously since April 2015.  *Id.* at 56.  Petitioner described the abdominal pain as discomfort that "gets so bad sometimes it goes up into her shoulders and into her chest" and was accompanied by shortness of breath.  *Id.*  She was diagnosed with suspected gastritis or gastroesophageal reflux disease ("GERD"), along with an anxiety component.  *Id.* at 57.

Over two years later, on April 4, 2018, Petitioner presented to the emergency room complaining of a headache, flu-like symptoms, knee pain from a jiu-jitsu injury, and a puncture wound on her foot from stepping on a nail three days earlier.  *Id.* at 140–41.  On that day, Petitioner received the Tdap vaccine.  *Id.* at 153.  She was diagnosed with a tension headache, likely flu infection, puncture wound, and a possible knee sprain or meniscal injury.  *Id.* at 142.

Throughout the next several months, Petitioner repeatedly visited her primary care physician complaining of chronic headaches and various injuries to her knee, ankle, and hand from jiu-jitsu.  *See, e.g.*, ECF No. 9-3 at 6–8, 109.  During a consultation on October 31, 2018, Petitioner began crying and her physician noted that Petitioner "continuously checks her phone, her tasks, her callander [sic], thinking something is wrong or something . . . will happen" and that she "drink[s] lots of water and she anticipates she will wake up and urinate while sleeping, [preventing] her from sleeping to the point that she has not been having a good sleep for a while."  *Id.* at 109.  Her physician diagnosed her with likely obsessive-compulsive disorder with anticipatory anxiety, vitamin deficiency, or other conditions.  *Id.*

2

In 2019, Petitioner presented to the emergency room numerous times. *See, e.g.*, ECF No. 9-4 at 2–3; ECF No. 59-1 at 11; ECF No. 9-2 at 36. During one visit, on September 15, 2019, Petitioner complained of heart palpitations, lower back pain, chest pain, and shortness of breath. ECF No. 9-2 at 36–39. On April 27, 2020, Petitioner complained to a physician in a telehealth appointment about difficulty breathing and that she had experienced stomach bloating for the past five years. ECF No. 31-3 at 2. The physician assessed her as suffering from possible mixed irritable bowel syndrome. *Id.* at 3. Three days later, on April 30, 2020, following further gastro-intestinal evaluation, Petitioner was diagnosed with gallstones but declined removal surgery. *Id.* at 7–8.

On June 12, 2020, Petitioner visited a chiropractor, complaining that she felt "out of wack [sic]," and was experiencing numbness, tingling sensations, and headaches. ECF No. 35-7 at 11. She had six follow-up visits with the chiropractor through July 8, 2020. *Id.* at 5–10. Petitioner consulted with a variety of other doctors for the remainder of the summer. *See, e.g.*, ECF No. 30-1 at 2; ECF No. 30-2 at 7; ECF No. 35-2 at 7; ECF No. 35-5 at 3, 23; ECF No. 9-5 at 13; ECF No. 58-2 at 51.

On March 25, 2021, nearly three years after receiving the Tdap vaccination, Petitioner presented to a cardiologist complaining of intermittent episodes of heart palpitations when she stood up or lay down. ECF No. 30-8 at 8. The cardiologist noted that Petitioner "said that she may have POTS." *Id.* The cardiologist assessed her as having heart palpitations and chest discomfort. *Id.* at 9. Nonetheless, Petitioner attributes various symptoms—chemical smell sensitivity, loss of height, low blood pressure, becoming a magnet for animals, an allergic reaction to sandflies, and fibrocystic breast disease—to her Tdap vaccination. ECF No. 28-1, ¶¶ 19–25.

**B.     Procedural History**

Petitioner filed her petition and filed a statement of completion on December 27, 2021. ECF No. 33. After Petitioner amended her petition, ECF No. 36, and filed an updated statement of completion, ECF No. 64, her case was activated from Pre-Assignment Review and randomly assigned to the chief special master. ECF No. 65.

On October 2, 2023, the chief special master held a status conference. After the conference, the chief special master issued a scheduling order outlining his impressions of Petitioner's initial case. ECF No. 68. The chief special master stated that he has "heard many claims arguing that a different vaccine (HPV) causes POTS or other forms of dysautonomia. But none have succeeded." *Id.* at 1. The chief special master further stated that he had "yet to adjudicate a case in which a petitioner allege[d] that the Tdap vaccine *specifically* caused POTS," remarking that it is "wholly conceivable that a causation theory involving this vaccine could be qualitatively different from what [he has] heard so often before." *Id.* However, the chief special master decided that Petitioner ought to "evaluate whether a more persuasive and preponderantly-supported causation theory"—specific to the Tdap vaccine causing POTS— could be mounted, before delving into the medical facts of Petitioner's case. *Id.* at 1–2. Accordingly, the chief special master provided Petitioner "an opportunity to file a brief (along with any helpful literature—especially more recently-published items) setting forth and

3

explaining the theory to be offered in this case." *Id.* at 2. The chief special master stated that Petitioner may "consult with an expert . . . although no expert report should yet be filed or obtained . . . ." *Id.*

On January 19, 2024, Petitioner filed the requested brief. ECF No. 69. In that brief, Petitioner attempted to establish the association between POTS and autoimmunity by arguing that the HPV vaccine has been shown to cause POTS. *Id.* at 17. Petitioner stated that the "HPV vaccine is much more likely to trigger POTS versus other vaccines." *Id.* Petitioner also argued that vaccination is a trigger of POTS, asserted a molecular mimicry argument, and noted the relationship between adrenergic receptors and POTS before arguing that the Tdap vaccine can induce POTS. *See generally id.* at 1–17. In response to the chief special master's order, Petitioner cited three medical articles that she claims establish that POTS can be triggered by vaccination. *See id.* at 15 (citing Hongliang Li et al., *Autoimmune Basis for Postural Tachycardia Syndrome*, J. AM. HEART. ASS'N., Jan. 2014, at 2 ("Li")); *id.* at 17–18 (citing Seung Won Seo et al., *Autonomic Instability in Severe Tetanus: A Case Report*, 23 ANN. CLIN. NEUROPHYSIOLOGY 117 (2021) ("Seung Won Seo")); *id.* at 11, 16–17 (citing Steven Verino et al., *Postural Orthostatic Tachycardia Syndrome (POTS): State of the Science and Clinical Care from a 2019 National Institutes of Health Expert Consensus Meeting*, AUTONOMIC NEUROSCIENCE: BASIC & CLINICAL, Nov. 2021, at 1 ("NIH consensus")).

In a subsequent scheduling order, the chief special master stated that despite Petitioner's efforts to substantiate her claim, his "initial views about the claim's scientific and medical weakness have only been confirmed by Petitioner's filings." ECF No. 72 at 1. The chief special master placed no weight on Petitioner's argument associating POTS with the HPV vaccine, stating that he has "evaluated [that theory] repeatedly in prior cases—and rejected [it]." *Id.* The chief special master was also unpersuaded by Petitioner's arguments regarding the association between Tdap and POTS, remarking that Petitioner's evidence included only a "case report (a kind of evidence not deemed to merit much weight generally)" and that Petitioner unfoundedly presumed that her "form of POTS was the uncommon, anti-adrenergic version that has not been established in this case . . . [to] be relevant or applicable." *Id.* at 3. The chief special master further criticized Petitioner's reliance on homology and molecular mimicry arguments as such methods are, in his view, "never sufficient to establish causation." *Id.* In sum, the chief special master stated that his "preliminary but informed view" was that Petitioner's claim was "not tenable," noting that if Petitioner "seeks to keep this claim alive, a far better showing associating the relevant vaccine and POTS must be made." *Id.* at 3–4 (emphasis omitted). The chief special master subsequently ordered Respondent to file a Rule 4(c) Report "so that Petitioner is fully informed of [Respondent's] response to her contentions" and invited Respondent to move to dismiss the claim. *Id.*

On April 30, 2024, Respondent filed a Rule 4(c) Report and moved to dismiss Petitioner's claim. ECF No. 73; ECF No. 74. After responsive briefing on the motion, the chief special master denied Petitioner entitlement to compensation, finding that Petitioner could not "substantiate her claim that the Tdap vaccine can cause POTS . . . ." *Stiegler*, 2024 WL 4678300, at *14. According to the chief special master, "[d]isposition of this claim . . . primarily turns on the first *Althen* prong, which requires a claimant to provide a 'persuasive medical theory' demonstrating that the vaccine received can cause or significantly aggravate the type of

4

injury alleged." *Id.* at *11 (quoting *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005)).  At the outset, Petitioner's repeated argument that the HPV vaccine could cause POTS was unavailing to the chief special master, who stated that he has "repeatedly found such arguments unpersuasive . . . [having] reached this conclusion after hearings, as well as evaluation of large amounts of relevant independent medical and scientific literature."  *Id.*  Furthermore, the chief special master noted that Petitioner, after spending most of her briefing establishing a connection between the HPV vaccine and POTS, only filed one unpersuasive case study to support her theory that the Tdap vaccine can cause POTS.  *Id.* at *12 ("[T]he only evidence offered specific to the relevant vaccine is a single case study, in which a patient with a life-threatening tetanus infection developed POTS-like symptoms ([Seung Won Seo]) . . . . [Seung] Won Seo says nothing about the Tdap vaccine and did not involve a POTS diagnosis either.").  The chief special master also found unpersuasive Petitioner's repeated molecular mimicry and homology arguments.  *Id.* ("But I have consistently held that establishing homology is not enough to prove that molecular mimicry constitutes a likely mediating mechanism for a vaccine-triggered injury.").  In total, according to the chief special master, there was "insufficient evidence offered [by petitioner] connecting the Tdap vaccine to POTS—*even less* than what [was] offered to connect the HPV vaccine to POTS (but which has been repeatedly rejected in prior well-reasoned decisions)."  *Id.* at *13.  For this reason, and because "nothing new [was] identified from the medical or scientific community that would provide a basis for allowing this claim to continue," the chief special master denied entitlement.  *Id.*

On November 8, 2024, Petitioner timely filed a motion for review.  ECF No. 88.  Respondent filed a response to Petitioner's motion on December 20, 2024.  ECF No. 95.  Petitioner moved the Court for leave to file a reply brief, ECF No. 96, which the Court denied, ECF No. 97.  Hours later, Petitioner filed a motion for reconsideration, ECF No. 98, and the reply brief, ECF No. 99, despite the Court's instruction not to do so.  The Court struck the brief from the record and ordered Petitioner's former counsel[1] to show cause as to why he should not be sanctioned for filing a brief despite this Court's denial of leave to do so.  ECF No. 100.  Petitioner's former counsel responded to the Court's show cause order that day.  ECF No. 101.  About a week later, on January 7, 2025, Petitioner filed a motion for interim attorneys' fees, ECF No. 102, and Respondent filed an opposition to that motion on January 21, 2025.  ECF No. 103.  The Court held oral argument on February 6, 2025.

## DISCUSSION

### A.   Legal Standard

In 1986, Congress established the National Vaccine Injury Compensation Program to provide a no-fault compensation program for those with vaccine-related injuries.  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 228 (2011); *see* 42 U.S.C. § 300aa-10 et seq. ("the Vaccine Act").  The Vaccine Act distinguishes between so-called "Table injuries," for which causation is presumed when a designated condition follows the administration of a select vaccine within a certain period of time, *see* 42 U.S.C. §§ 300aa-11(c), 300aa-14, and all other injuries alleged to be

---

[1] On January 24, 2025, Petitioner's counsel, Courtney Jorgenson, filed an unopposed motion to substitute attorney of record, ECF No. 105, thereby replacing Petitioner's former counsel, Andrew Downing, as attorney of record in this case.

caused by a vaccine, known as "off-Table injuries," "for which causation must be proved in each case." *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010).

Here, Petitioner's asserted injuries—POTS and CFS allegedly caused by the Tdap vaccine—are "off-Table" injuries.  *See* 42 U.S.C. § 300aa-14.  Accordingly, to prove causation for an off-Table injury, Petitioner must show that the vaccine was "not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health & Hum. Servs.*, 165 F.3d 1344, 1352 (Fed. Cir. 1999).  In *Althen v. Secretary of Health & Human Services*, the Federal Circuit promulgated a three-step test to guide petitions alleging off-Table injuries.  418 F.3d at 1278.  Under *Althen*, to successfully demonstrate causation, a petitioner must advance "a medical theory causally connecting the vaccination and the injury," illustrate "a logical sequence of cause and effect showing that the vaccination was the reason for the injury," and establish a "proximate temporal relationship between vaccination and injury." *Id.*

Under the Vaccine Act, judges of this Court review decisions issued by special masters upon a petitioner's filing of a motion for review.  42 U.S.C. § 300aa-12(e)(1).  The Court reviews a special master's findings of fact under the "arbitrary and capricious" standard, legal questions under the "not in accordance with law" standard, and discretionary rulings for "abuse of discretion." *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992); *see Boatmon v. Sec'y of Health & Hum. Servs.*, 941 F.3d 1351, 1358 (Fed. Cir. 2019).  Pertinent to this case, the Court reviews a special master's case management decisions—which are discretionary rulings—under the "abuse of discretion" standard. *Stewart-Robinson v. Sec'y of Health & Hum. Servs.*, 173 Fed. Cl. 567, 575 (2024).

"Special masters have broad discretion to determine how to best manage the cases before them." *Bello v. Sec'y of Health & Hum. Servs.*, 158 Fed. Cl. 734, 748 (2022).  As Judge Kaplan has noted, Rule 3(b) of Appendix B of the Rules of the U.S. Court of Federal Claims ("Vaccine Rules") "states that '[t]he special master is responsible for conducting all proceedings' and 'shall determine the nature of the proceedings, with the goal of mak[ing] the proceedings expeditious, flexible, and less adversarial.'" *Id.* (alteration in original).  Furthermore, "under Vaccine Rule 8(a), the special master has discretion to 'determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties.'" *Id.* (quoting Vaccine Rule 8(a)).  Vaccine Rule 8(d) also "expressly states that '[t]he special master may decide a case on the basis of written submissions without conducting an evidentiary hearing.'" *Id.* (alteration in original) (quoting Vaccine Rule 8(b)).  Such a decision is referred to as a "ruling on the record." *See, e.g., id.*; *Kreizenbeck v. Sec'y of Health & Hum. Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020).

However, a special master's discretion in ruling on the record is not without limitation. Vaccine Rule 8(b) mandates that special masters "consider all relevant and reliable evidence" and ensure that all proceedings are "governed by principles of fundamental fairness to both parties."  Special masters must also "determine that the record is comprehensive and fully developed before ruling on the record." *Kreizenbeck*, 945 F.3d at 1366.  But so long as the special master follows these general principles, decisions regarding the management of a case are left to his or her discretion and are "subject to reversal only under the highly deferential abuse of discretion standard." *Bello*, 158 Fed. Cl. at 748 (citing *Kreizenbeck*, 945 F.3d at 1364).

6

**B.      Analysis**

Petitioner essentially makes two arguments in her motion for review.  First, Petitioner argues that, because the chief special master dismissed her petition pursuant to RCFC 12(b)(6) and did not adhere to the legal standards for applying that rule, the chief special master's decision is not in accordance with law.  *See* ECF No. 91 at 18.  Alternatively, Petitioner argues that the chief special master's ruling on the record without allowing Petitioner to file expert reports constitutes an abuse of discretion.  *See id.* at 35.  Petitioner separately seeks award of interim attorneys' fees.  The Court will address these three issues in turn.

### 1. The Chief Special Master Did Not Dismiss Petitioner's Case Under RCFC 12(b)(6).

Petitioner argues that the chief special master dismissed her petition under RCFC 12(b)(6).  ECF No. 91 at 18.  For this reason, Petitioner contends that the chief special master had to draw "every inference in favor of Ms. Stiegler" under this rule and, because he did not do so, his finding that she failed to meet her initial burden of proof was not in accordance with law.  *Id.* at 33.  Petitioner feels she was "deprived of an opportunity to prove her case" and that there is "no legal reason that a 12(b)(6) motion should have been successful under the facts of this case, the pleadings filed, and the evidence presented."  *Id.* at 39.

Respondent argues that the chief special master did not dismiss the case pursuant to RCFC 12(b)(6); rather, "after soliciting and reviewing significant evidence, [he] determined there was insufficient evidence of a causal theory."  ECF No. 95 at 10.  In furtherance of this argument, Respondent notes that, if a court dismisses a case for failure to state a claim, it generally considers "only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record."  *Id.* at 11 (alteration in original) (quoting *Pension Benefit Gaur. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Here, according to Respondent, the chief special master "invited petitioner to attempt to address . . . concerns" he had with Petitioner's case and "carefully considered petitioner's submissions, including 'extensive medical records and briefs to support her claim, along with a lengthy appendix of medical and scientific articles' before determining that petitioner could not meet her burden."  *Id.* (quoting *Stiegler*, 2024 WL 4678300, at *14).  Respondent argues that this constitutes a ruling on the record rather than an RCFC 12(b)(6) dismissal.  *See id.* at 11–12.

"[S]pecial masters have jurisdiction to rule on motions to dismiss," *W.J. v. Sec'y of Health & Hum. Servs.*, 93 F.4th 1228, 1243 (Fed. Cir. 2024), and the legal standard special masters must follow in ruling on such motions are no different than they are for judges.  *See Felix v. Sec'y of Health & Hum. Servs.*, 172 Fed. Cl. 626, 632 (2024).  Therefore, "in ruling upon a motion to dismiss, the special master must accept as true the facts asserted by the petitioner in determining whether the claim for relief under the Vaccine Act is both 'sufficient' and 'plausible on its face.'"  *Id.* (quoting *W.J.*, 93 F.4th at 1235).

Here, both the chief special master's opinion and the parties' subsequent briefing make clear that this case was not dismissed under RCFC 12(b)(6).  Particularly illustrative is the fact

that neither the chief special master's decision nor the parties' briefs reference the petition itself. If this were an RCFC 12(b)(6) dismissal, discussion of the petition itself would be central to the chief special master's decision—and certainly to Petitioner's challenge of the decision as not in accordance with law—because the RCFC 12(b)(6) standard looks to the factual allegations of the complaint or, in this case, the petition. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a *complaint* must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (emphasis added)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a *complaint* attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." (first alteration in original) (emphasis added) (citation omitted)).

However, instead of referencing her barebones amended petition, Petitioner argues that, given the "facts of this case, the pleadings filed, and the evidence presented,"[2] there is no legal basis with which the chief special master could have granted an RCFC 12(b)(6) dismissal. ECF No. 91 at 39. In furtherance of this argument, Petitioner relies on *Herren v. Secretary of Health & Human Services*, No. 13-1000V, 2014 WL 3889070 (Fed. Cl. Spec. Mstr. July 18, 2014). In *Herren*, the special master, in summarizing *Warfle v. Secretary of Health & Human Services*, stated that special masters must draw "all inferences from the available evidence in petitioner's favor" when deciding a motion to dismiss. *Id.* at *2 (citing *Warfle*, No. 05-1399V, 2007 WL 760508, at *2 (Fed. Cl. Spec. Mstr. Feb. 22, 2007)). Therefore, Petitioner argues, "[d]rawing all inferences from the available evidence in [Petitioner]'s favor, she has far surpassed her burden to survive the motion to dismiss." ECF No. 91 at 33.

However, *Herren* misapplies the RCFC 12(b)(6) legal standard. As explained above, when deciding on a motion to dismiss, the Court looks to the factual allegations of the *complaint*—or in vaccine cases, the petition[3]—and assumes all such allegations in the non-moving party's favor. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The Court does not look to the "available evidence" as *Herren* states or construe any such evidence in the non-moving party's favor. 2014 WL 3889070, at *2. For this reason, Petitioner's reliance on *Herren* is unpersuasive.

Although the chief special master invited Respondent to move to dismiss the case and used language suggesting dismissal under RCFC 12(b)(6) in his decision,[4] *see Stiegler*, 2024 WL 4678300, at *3 ("the motion to dismiss is now ripe for resolution"), the chief special master's decision to deny Petitioner entitlement to compensation is better characterized as a ruling on the

---

[2] The Court takes Petitioner's reference to "pleadings filed" to mean briefs filed by both parties and not "pleadings" in the formal use of the term (i.e., a complaint and an answer).

[3] *Bass v. Sec'y of Health and Hum. Servs.*, 12-135V, 2012 WL 3031505, at *5 (Fed. Cl. Spec. Mstr. June 22, 2012) ("Here, [petitioner's] *initial petition* is vulnerable to a [RCFC 12(b)(6)] motion to dismiss for failure to state a claim because it lacks adequate factual allegations." (emphasis added)).

[4] The Court cautions the chief special master against using language suggesting dismissal when ruling on the record. "Dismissal" as a term is generally understood to mean adjudication under RCFC 12. In cases in which the chief special master is not adjudicating a case under RCFC 12, he should not use the term "dismissal" as such use sows confusion among litigants and leads to unnecessary litigation, which depletes the Court's limited resources.

8

record than as an RCFC 12(b)(6) dismissal when reading the decision in its entirety and considering the arguments asserted by the parties both before the chief special master and this Court. For these reasons, the chief special master did not dismiss Petitioner's case pursuant to RCFC 12(b)(6) and was not required to draw inferences in Petitioner's favor. Therefore, on this ground, his decision was in accordance with law and not violative of the RCFC 12(b)(6) legal standard.

> **2. The Chief Special Master Did Not Abuse His Discretion When He Denied Entitlement Without Providing Petitioner an Opportunity to File Expert Reports.**

Petitioner and Respondent discuss at great length whether Petitioner had POTS and the proper onset for that disease. *See* ECF No. 91; ECF No. 95. But that is not what is at issue in this petition for review. The chief special master did not premise his decision on diagnosis or onset arguments. Instead, the chief special master denied entitlement because Petitioner failed to establish a causal theory under *Althen* prong 1. *Stiegler*, 2024 WL 4678300 at *11; ECF No. 91 at 38 ("Petitioner is not appealing *Althen* Prong 2 because the Chief Special Master did not make a determination regarding *Althen* Prong 2."). Specifically, the issue before the Court is whether the chief special master abused his discretion when he denied entitlement without providing Petitioner an opportunity to file expert reports.

Petitioner argues that she should have been permitted to file expert reports before the chief special master rendered a decision. ECF No. 91 at 31. According to Petitioner, an expert witness would have been able to "provide discussion of [Petitioner's submitted medical] articles within an expert report detailing causation." *Id.* at 38. Petitioner argues that such expert testimony would better establish her causal theory and would, therefore, alleviate the chief special master's skepticism of her case. *See id.* at 38–39. For this reason, according to Petitioner, the chief special master's ruling on the record without considering expert reports was an abuse of discretion. *Id.*

Conversely, Respondent contends that the chief special master had the authority to rule on the record without expert testimony as long as he determined that the record was "comprehensive and fully developed" before so doing. ECF No. 95 at 11 (quoting *Kreizenbeck*, 945 F.3d 1366). Respondent further argues that, because of the "absence of new, reliable medical or scientific evidence specific to the Tdap vaccine and in consideration of his prior experience in similar cases," the chief special master was within his discretion to determine that "he did not need expert reports to assist in his adjudication of the case." *Id.* at 19.

"Special masters have broad discretion to determine how to best manage the cases before them." *Bello*, 158 Fed. Cl. at 748. So long as special masters "consider all relevant and reliable evidence," ensure that all proceedings are "governed by principles of fundamental fairness to both parties," and determine that "the record is comprehensive and fully developed before ruling on the record," *id.* (quoting *Kreizenbeck*, 945 F.3d at 1366), decisions regarding the management of a case are left to his discretion and are "subject to reversal only under the highly deferential abuse of discretion standard." *Id.* (citing *Kreizenbeck*, 945 F.3d at 1364).

9

Additionally, under Vaccine Rule 8(e), special masters have a duty to manage cases in a manner that forwards "Congress's objective of making [Vaccine Program] proceedings expeditious, flexible, and less adversarial." *Cox v. Sec'y of Health & Hum. Servs.*, 30 Fed. Cl. 136, 148 (1993); *see also Stewart-Robinson*, 173 Fed. Cl. at 576 (quoting Vaccine Rule 3(b)(2)). To better perform this duty, special masters may rely on their experience in previous cases as they "have the expertise and experience to know the type of information that is most probative of a claim." *Doe v. Sec'y of Health & Hum. Servs.*, 76 Fed. Cl. 328, 339 (2007). This duty becomes particularly salient when considering the increasing backlog of cases within the Vaccine Program. The program sees many cases alleging that a vaccination caused POTS. Specifically, according to one study, since 1998, petitioners filed 102 POTS-related cases. Waqar Waheed, et al., *Do Vaccines Cause Postural Orthostatic Tachycardia Syndrome? Review of Cases in the National Vaccine Injury Compensation Program*, PEDIATRIC NEUROLOGY, Dec. 2024 at 229, 232 ("Waheed"). Of those 102 cases, the special masters determined that POTS, among other conditions, could have been caused by immunization in only one case.[5] *Id.* at 233. According to the study, in no other case has a special master determined that POTS was caused by immunization. *Id.*

With this background in mind, the chief special master viewed Petitioner's initial case with skepticism. After an initial review of the proffered evidence, the chief special master essentially asked: "What do you have that's new on this well-settled topic?" Petitioner responded to this inquiry by filing medical articles purportedly supporting two arguments. First, according to Petitioner, "POTS is an autoimmune disease that [can be] triggered by vaccination." ECF No. 69 at 2; *id.* at 2–9. In furtherance of this argument, Petitioner argued in great length and cited articles stating that the HPV vaccine can cause POTS. *See id.* at 2–9. Second, Petitioner asserts, the Tdap vaccine can induce POTS, as evidenced by other immunizations causing autoimmune disease and by searching the "UniProt" database to conduct a molecular mimicry test performed by Petitioner's former counsel. *Id.* at 17–20. However, Petitioner's arguments are not new. Of the 102 POTS cases adjudicated by the special masters, petitioners alleged the HPV vaccine caused POTS in 71 cases. Waheed at 233. Furthermore, like Petitioner here, petitioners made the arguments that immunization induces autoimmune disease and that molecular mimicry between a vaccine and neural tissue results in POTS in 85.7% and 78.6% of all POTS cases, respectively. *Id.* at 233–34.

Despite these statistics and the chief special master's own experience in adjudicating cases in which vaccination-caused POTS was alleged, the chief special master fully considered Petitioner's arguments and cited authorities. Regarding Petitioner's first argument, the chief special master personally concluded in numerous prior cases that POTS is most commonly not attributable to an autoimmune process. *Stiegler*, 2024 WL 4678300, at *11 (listing cases). Petitioner's reliance on articles establishing that the HPV vaccine can cause POTS was unpersuasive, as the chief special master has "previously rejected as unreliable or unpersuasive"

---

[5] *Dunbar v. Sec'y of Health & Hum. Servs.*, No. 98-627V, 2007 WL 2844826 (Fed. Cl. Spec. Mster. Sept. 14, 2007). The petitioner there argued that his hepatitis B vaccination caused various conditions such as encephalopathy, POTS, autoimmune hepatitis, neuropathy, and lupus-like syndrome. *See id.* at *27. The special master awarded entitlement finding that the petitioner proved "a prima facie case of causation in fact and but for the hepatitis B vaccinations, he would not have had the conditions he currently has . . . ." *Id.* at *28.

10

the very articles Petitioner cites for this proposition. *Id.* at \*12 (citing *C.F. v. Sec'y of Health & Hum. Servs.*, No. 15-731V, 2023 WL 2198809, at \*15, \*17–19, \*32 (Fed. Cl. Spec. Mstr. Jan. 20, 2023). Because the chief special master previously scrutinized these articles and found them unpersuasive, his disregard for their propositions in this case does not constitute an abuse of discretion.

Turning to Petitioner's second argument, the chief special master similarly discredited in a previous case the Seung Won Seo case study which, Petitioner purports, is evidence that the Tdap vaccine can induce POTS. According to the chief special master, the Seung Won Seo case study is not relevant as it "says nothing about the Tdap vaccine[] and did not involve a POTS diagnosis either." *Stiegler*, 2024 WL 4678300, at \*12. The chief special master has discretion to determine the relevancy of evidence, which is reviewed under the abuse of discretion standard. *See Contreras v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1363, 1368 (Fed. Cir. 2017); *Bello*, 158 Fed. Cl. at 748 ("To be sure, special masters are obligated to 'consider all relevant and reliable evidence'. . ." (quoting Vaccine Rule 8(b))). His decision here—that the Seung Won Seo case study is not relevant—does not constitute an abuse of discretion. The Seung Won Seo case study merely chronicled *one* patient's POTS-like symptoms that developed after a life-threatening tetanus infection without mentioning any vaccine, let alone the Tdap vaccine.

Perhaps recognizing the weakness of her case on the existing record, Petitioner focuses her petition for review on the chief special master's decision to deny entitlement without allowing her to file expert reports. Petitioner essentially argues that she cannot analyze what was new in her claim without expert reports. *See* ECF No. 91 at 30–31. For this reason, she argues, her denial of entitlement without the ability to file expert reports constitutes an abuse of discretion because she did not have an opportunity to fully present her case. *See id.*

But, in this case, the chief special master gave Petitioner a full and fair opportunity to present written evidence and argument. The chief special master afforded Petitioner numerous extensions of time to submit her affidavits, medical records, and authorities, and she ultimately filed a statement of completion, certifying that all supporting records had been submitted, after amending her petition. *See* ECF No. 36. Additionally, the chief special master explicitly gave Petitioner a chance to address the typical shortcomings presented in cases in which claimants attempt to prove that a vaccine can cause POTS. He cautioned Petitioner, stating that in his experience many claimants argued "that a different vaccine (HPV) causes POTS . . . [b]ut none have succeeded." ECF No. 68 at 1. Recognizing that it is "wholly conceivable" that the Tdap vaccine may cause POTS under the causation theory claimed here, *id.*, the chief special master gave Petitioner two more chances to develop her case. The first was ordering Petitioner to file brief regarding her causal theory. ECF No. 69. Second, after Petitioner asserted arguments in that brief that the chief special master had previously determined to be unpersuasive, the chief special master afforded Petitioner yet another opportunity to establish her case by ordering Respondent to file a Rule 4(c) Report and allowing Petitioner to respond that report. ECF No. 72 at 3–4. In her response, Petitioner once again largely repeated arguments and cited articles that the chief special master already discredited.

Moreover, Petitioner's argument that expert reports are imperative to establishing her case is unpersuasive. Petitioner emphasizes in her petition for review two articles—Li and the

11

NIH consensus report—about which an expert witness could have "conduct[ed] a more comprehensive medical search and opine[d]" and could have "provide[d] discussion of these articles within an expert report detailing causation." *See* ECF No. 91 at 38. Petitioner relies on the Li article to argue that there is a homological correlation between Tdap vaccination and the onset of POTS because the adrenergic receptor mentioned in that study is the "same receptor that Petitioner demonstrated molecular mimicry with the Tdap vaccination received by Ms. Stiegler." *Id.* at 31 (emphasis omitted). However, no expert report was needed to explain this argument to the chief special master, who not only determined in previous cases that "establishing homology is not enough to prove that molecular mimicry constitutes a likely mediating mechanism for a vaccine-triggered injury," *see Stiegler*, 2024 WL 4678300 at *12 (listing cases), but has also considered this very article in a previous case and determined that it was unreliable. *A.F. v. Sec'y of Health & Hum. Servs.*, No. 19-446V, 2023 WL 251948, at *5–6 (Fed. Cl. Spec. Mstr. Jan. 18, 2023) ("But Li[]'s authors admitted that demonstrated cardiovascular changes had some problems when compared to humans, since rabbits are quadrupeds.").

Similarly, Petitioner contends that the NIH consensus report establishes certain triggers for POTS, one of which may be "immunological stressors such as viral infection." ECF No. 91 at 28 (quoting the NIH consensus report at 2). It is worth noting at the outset that the NIH consensus report Petitioner filed is a 2021 article explaining the state of POTS research from a 2019 NIH expert consensus meeting. *See* NIH consensus report at 2. Since that time, as Respondent notes, studies conducted contemporaneously with the NIH consensus report in 2019 have faced scrutiny from more-recently-published articles.[6] ECF No. 83 at 6 n.4, 7–9. Furthermore, Petitioner's above quote from the article demonstrates that the NIH consensus report discusses viral infection, not a vaccine, as an "immunological stressor" that could cause POTS. NIH consensus report at 2. The chief special master was within his discretion to determine that this article is of limited relevance to Petitioner's argument that the Tdap *vaccine* can cause POTS. In short, the chief special master could determine the unreliability and lack of relevancy of this article on its face without expert reports.

Although the chief special master originally stated that he would not permit expert reports to be filed, he stated that Petitioner "may consult with an expert" and report back. ECF No. 68 at 2. While it is unclear to what extent Petitioner consulted with an expert, it is clear that Petitioner never moved for leave to file an expert report, despite a subsequent scheduling order stating that adjudication of this case was imminent.[7] ECF No. 72 at 3–4 ("If Petitioner seeks to keep the claim alive, a far better showing associating the relevant vaccine and POTS must be made."). Therefore, though not dispositive, Petitioner argues that the chief special abused his discretion by "denying" her something she never formally requested. Instead of explaining to

---

[6] *See, e.g.*, Juliette Hall, et al., *Detection of G Protein-Coupled Receptor Autoantibodies in Postural Orthostatic Tachycardia Syndrome Using Standard Methodology*, 146 CIRCULATION, 613, 620 (2022) (calling into question the results of previous POTS studies that did not properly include a control group against which to compare data).

[7] Petitioner's former counsel seemingly has no problem pushing the envelope when it comes to filings. Before this Court, Petitioner's former counsel filed a motion for leave to file a reply brief, ECF No. 96, which the Court denied, ECF No. 97. Despite this lack of leave, Petitioner's former counsel filed the reply brief anyway, ECF No. 99, which the Court struck and for which the Court issued a show cause order. ECF No. 100.

the chief special master specially how an expert report would establish a causal theory under *Althen* prong 1, Petitioner asserted that an expert report would merely affirm Petitioner's fruitless arguments or establish her diagnosis and onset of POTS. *See* ECF No. 81 at 37 ("Petitioner's filing of an expert report would further explain the diagnostic criteria of POTS . . . and would explain why Ms. Stiegler's case meets the diagnostic criteria."). Put differently, rather than explaining the utility of expert reports in establishing a causal theory or formally moving for leave to file an expert report, Petitioner filed medical articles and asserted causal theories that the chief special master has repeatedly discredited in previous cases.

As demonstrated above, the chief special master reviewed Petitioner's medical authorities and arguments in various prior cases and drew upon those conclusions to inform his decision to deny entitlement to compensation. To be sure, if these medical articles were relevant and the chief special master had not reviewed them in previous cases, his decision to deny entitlement without reviewing an expert report could constitute an abuse of discretion. But that is not the case here. Instead, the chief special master generously asked for new evidence to revive Petitioner's weak initial case, which was based on studies that the chief special master and other special masters have repeatedly seen and rejected in the past. Instead of providing any new studies or evidence, Petitioner responded by providing medical literature and asserting causal theories the chief special master himself has repeatedly deemed insufficient to move the *Althen* needle. For this reason, the chief special master decided that that the record was "comprehensive and fully developed" after Petitioner's repeated failure to present anything new. *See Kreizenbeck*, 945 F.3d at 1366 ("As a result, special masters must determine that the record is comprehensive and fully developed before ruling on the record."). Recognizing that expert reports would only delay the inevitable, the chief special master denied entitlement without consideration of such reports. This is not an abuse of discretion.

In addition to alleging that the Tdap vaccine caused POTS, Petitioner argues that her vaccination caused CFS. However, Petitioner spent virtually no time in her brief or at oral argument developing this argument or even mentioning CFS beyond a mere reference to the condition while speaking to POTS. In other words, there is nothing before this Court, and there was minimal support before the chief special master, to develop Petitioner's CFS claim beyond conclusory statements. For example, Petitioner does not explain to this Court what the chief special master supposedly got wrong regarding CFS or allege that the chief special master did not allow her to develop this claim. For these reasons, the Court finds that Petitioner has waived any arguments regarding CFS and will not consider Petitioner's CFS claims. *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1305 (Fed. Cir. 2021) ("An issue that is merely alluded to and not developed as an argument in a party's brief is deemed waived."); *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1250 n.2 (Fed. Cir. 2008) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))); *Bauer v. United States*, No. 24-287L, 2025 WL 1064205, at *4 (Fed. Cl. Apr. 9, 2025) ("When an argument is not fully developed in briefing, this Court—absent unusual circumstances—ordinarily finds a forfeiture . . . .").

In sum, Petitioner brings a claim to the Vaccine Program that has been routinely heard and consistently rejected by the special masters. Recognizing the familiar allegations of Petitioner's claims from his adjudication of identical arguments and authorities in previous cases,

13

the chief special master ordered Petitioner to present something new before progressing this case any further. Petitioner failed to do so. In the interests of fairness to the parties and expediency of proceedings, the chief special master's subsequent decision to deny entitlement without considering expert reports does not constitute an abuse of discretion.

### 3. Contempt of Court and Petitioner's Motion for Interim Attorneys' Fees

On January 7, 2025, Petitioner filed a motion for interim attorneys' fees totaling $99,501.58. ECF No. 102 at 12. Therein, Petitioner's former counsel, Andrew Downing, informed the Court that he and his firm would no longer be able to represent Petitioner in this case because counsel "had the honor of being vetted for a Presidential appointment within [the] U.S. [Department of] Health and Human Services." *Id.* at 2. In furtherance of this motion, Petitioner's former counsel argues that this case was brought in good faith and that there was a reasonable basis for the claims asserted. *Id.* at 3. Respondent opposes the motion, arguing that Petitioner lacks a reasonable basis for her claims because Petitioner never established that she had POTS or CFS, has not "provided more than a scintilla of evidence" of general or specific causation evidence, and has not established a proximal temporal relationship between her vaccination and the onset of her injuries. ECF No. 103 at 17–20.

The Vaccine Act permits a special master or the Court to award "as part of such compensation an amount to cover reasonable attorneys' fees." 42 U.S.C. § 300aa-15(e)(1)(A). The Federal Circuit has determined that section 300aa-15(e) contemplates awards of interim attorneys' fees, as the statute applies to fees and costs "'incurred in any proceeding on such petition,' and not solely those fully adjudicated on the merits." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361 (Fed. Cir. 2012) (quoting 42 U.S.C. § 300aa-15(e)). This case, however, has now been fully adjudicated on the merits so there is no need to award "interim" fees. Moreover, as the Federal Circuit has observed, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). Here, the status of the case is not protracted (it is resolved) and no experts were retained (the inability to file expert reports was the main point of Petitioner's motion for review). Furthermore, Petitioner made no showing of "undue hardship" or any other showing that "would justify an award of interim fees." *Id.* Rather, Petitioner merely states that her former counsel's "firm will be closing down" without tying that statement to any claim of undue hardship or other justification for award of interim fees. ECF No. 102 at 3. In other words, this statement is just that—a statement with no associated argument explaining why the closing of the firm necessitates or otherwise justifies the award of interim fees.

Accordingly, Petitioner's motion for interim attorneys' fees is denied. The chief special master can assess the reasonableness of the fees sought in the "interim" along with any other fees sought after the issuance of this opinion. However, if fees and costs are to be awarded, the chief special master shall award fees with the following instructions regarding the reasonableness of a subset of those fees and Petitioner's former counsel's contempt of court. The chief special master shall not award any attorneys' fees and costs incurred in relation to Petitioner's motion for reconsideration (ECF No. 98), Petitioner's stricken reply brief (ECF No. 99), or Petitioner's

14

response to the Court's show cause order (ECF No. 101).  Denial of attorneys' fees and costs for these filings is justified for two reasons.

First, there was no reasonable basis for the filing of the motion for reconsideration or filing the reply brief after reconsideration was denied because the motion for reconsideration was frivolous and the filing of the reply brief was explicitly prohibited by the Court's denial of leave to file the reply brief.  In her motion for reconsideration, Petitioner argued that "leave of Court is not required" to file a reply brief because "based on [RCFC] 5.4, the Court has no statutory authority to deny a Reply on a motion for review."  ECF No. 98 at 1, 2.  Petitioner has the rule here backwards.  It is Petitioner that has no statutory right, nor a right under the RCFC or the Vaccine Rules, to file a reply brief.  The Vaccine Act provides that if a motion for review is filed with the Court, "the other party shall file a response with the clerk of the United States Court of Federal Claims no later than 30 days after the filing of such motion."  42 U.S.C. § 300aa-12(e)(1)).  In short, the Vaccine Act does not provide for a reply brief on a motion for review.  This is clear because the time for the Court to decide a motion for review is tied to the response brief: "[t]he court shall complete its action on a petition within 120 days of the filing of a response under paragraph (1) excluding any days the petition is before a special master as a result of a remand under subparagraph (C)."  *Id.* § 300aa-12(e)(2)(c).  The only exception to this time limit is in cases in which remand to the special master is ordered.  *Id.*  A reply brief is simply not contemplated in the Vaccine Act.  The Vaccine Rules similarly do not provide for a reply brief.  *See* Vaccine Rule 28(a) ("The assigned judge must complete the review within 120 days after the filing of a response under Vaccine Rule 25 . . . ."); *see also* Vaccine Rule 25.  Put simply, the Vaccine Act and the Vaccine Rules provide for a motion for review and a response to any such motion.  A reply brief can only be filed by leave of the Court.

Moreover, contrary to Petitioner's assertion, the RCFC likewise do not provide the ability to file a reply brief, without leave of the Court, in a vaccine case.  Petitioner tried to divine such a right through a highly strained reading of RCFC 5.4.  *See* ECF No. 98.  Petitioner argued that because RCFC 5.4(a)(4) provides that "[a] reply brief or memorandum must conform to the requirements of RCFC 5.4(a)(3)," Petitioner had the right to file a reply brief without leave of the Court.  *Id.* at 1–2 (quoting RCFC Rule 5.4).  But RCFC 5.4 does not provide any such right; rather, RCFC 5.4 provides the rule that governs the contents and length of a brief or memorandum, including a reply brief.  The only application of RCFC 5.4 that would have been relevant here is *if* the Court had granted Petitioner's motion for leave.  The Court denied that motion; therefore, Petitioner did not have the right to file a reply brief under RCFC 5.4 or otherwise.

This Court, like all federal courts, has inherent power "to control the disposition of the causes on its docket with economy of time and effort."  *CliniComp Int'l, Inc. v. United States*, 134 Fed. Cl. 736, 753 (2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).  Petitioner misses the mark in arguing that the Court is without the discretionary authority to control its own docket, and thus cannot deny leave for certain filings, simply because the RCFC contemplate the filing of reply briefs in certain instances.  For this reason, Petitioner's motion for reconsideration, ECF No. 98, and Petitioner's stricken reply, ECF No. 99, along with the response to the Court's show cause order, ECF No. 101, lack a reasonable basis and the chief

15

special master may not award attorneys' fees and costs incurred in connection with any of these filings.

Even if there were a reasonable basis for these filings, denial of attorneys' fees and costs related to the filing of a brief in direct contradiction of the Court's denial of leave is a reasonable sanction for contempt. This goes as well for the closely related motion for reconsideration and the response to the Court's show cause order. A court may assess attorneys' fees as a sanction for the "willful disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)). To determine that a party acted in willful disobedience of an order, the Court "need not find that the party acted in bad faith." *Pyramid Real Estate Services, LLC v. United States*, 95 Fed. Cl. 613, 623 (2010) (quoting *Alyeska*, 421 U.S. at 258)). Instead, the Court may find a "willful violation" when it determines that a party took an action that "it knew or should have known to be contrary to an express court order." *Pac. Gas & Elec. Co. v. United States*, 82 Fed. Cl. 474, 483 (2008).

Here, Petitioner moved the Court for leave to file a reply brief. *See* ECF No. 96. The Court denied such leave. ECF No. 97. Mere hours later, Petitioner's filed the reply brief anyway, despite the Court's instruction not to do so. ECF No. 99. It is readily apparent that Petitioner's counsel knew filing this brief was "contrary to [the] express court order" denying him permission to file that brief. *Pacific Gas & Elec. Co.*, 82 Fed. Cl. at 483. Therefore, the chief special master shall not award attorney's fees for any work done on Petitioner's stricken brief, ECF No. 99, motion for reconsideration, ECF No. 98, or response to the Court's show cause order related to filing that brief, ECF No. 101, because denial of attorneys' fees and costs is a reasonable sanction for Petitioner's former counsel's contemptuous filing of the reply brief. *See* 28 U.S.C. § 2521(b) (providing the Court with statutory contempt authority).

## CONCLUSION

For the foregoing reasons, the Court finds that the chief special master adequately reviewed the record and determined that it was fully developed before denying entitlement. Therefore, his decision to deny entitlement without considering expert reports was not an abuse of discretion. In light of these conclusions, the chief special master's decision denying entitlement is **AFFIRMED** and Petitioner's motion for review is **DENIED**. Additionally, Petitioner's motion for interim attorneys' fees is **DENIED**, and the chief special master is instructed—if fees are sought and he determines any such fees are reasonable—to only award attorneys' fees and costs in a manner that is consistent with the above instruction regarding contempt of court. The Clerk shall enter **JUDGMENT** accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge