# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

**No. 21-1152V**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| ALISON STIEGLER, | \* | Chief Special Master Corcoran |
| Petitioner, | \* | Filed:  January 21, 2026 |
| v. | \* | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Courtney C. Jorgenson*, Siri & Glimstad, LLP, Phoenix, AZ, for Petitioner.

*Sarah C. Duncan*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS[1]

On April 2, 2021, Alison Stiegler filed a petition under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleged that she developed Postural Orthostatic Tachycardia Syndrome ("POTS") and chronic fatigue syndrome ("CFS") as a result of receiving the tetanus, diphtheria, and acellular pertussis ("Tdap") vaccine on April 4, 2018. Petition (ECF No. 1) at 1. After briefing, I issued a decision denying entitlement on October 10, 2024. *See* Decision, dated Oct. 10, 2024 (ECF No. 86) ("Decision"). Petitioner moved for review (ECF No. 88), but the motion was denied. *See* Judge Vaccine Order/Opinion, dated Apr. 18, 2025 (ECF No. 109) ("Vaccine Order").

While the Motion for Review was pending, Petitioner filed a Motion for Interim Attorney's Fees and Costs in January 2025, seeking $99,501.58 ($97,701.00 in attorney's fees, plus $1,800.58

---

[1] "Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*"

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

in costs). *See* ECF No. 102 ("Interim Fees Motion"). This fees request sought reimbursement for work performed on the matter for the work of two law firms—the first (Van Cott & Talamante) which handled the matter from March 2021 (shortly before its initiation) to July 2022; and the second (Downing, Allison, & Jorgenson) that represented Petitioner from July 2022 to January 2025. *See* Ex. A (ECF No. 102-1) to Interim Fees Motion at 1–23, 77–90. Respondent filed his opposition to the motion on January 27, 2025, alleging that Petitioner's claim lacked a reasonable basis. *See* Opposition, dated Jan. 27, 2025 (ECF No. 103).

In the context of denying Petitioner's Motion for Review, the Court denied the Interim Fees Motion, noting that the case "ha[d] been fully adjudicated on the merits so there [wa]s no need to award 'interim fees." Vaccine Order at 14. I was directed instead to resolve a final fees request—but in so doing, to "not award any attorneys' fees and costs incurred in relation to Petitioner's motion for reconsideration (ECF No. 98), Petitioner's stricken reply brief (ECF No. 99), or Petitioner's response to the Court's show cause order (ECF No. 101)." *Id.* at 14–16.[3]

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated June 18, 2025 (ECF No. 114) ("Final Fees Motion"). Petitioner seeks additional fees and costs incurred from January to June 2025 (along with what was previously requested in the interim fees request). Ex. 41 (ECF No. 115-1) at 1–6. Petitioner requests the additional sum of $19,818.42 ($17,841.50 in attorney's fees, plus $1,976.92 in costs) for the work of the attorneys and staff at a third law firm.[4] Final Fees Motion at 6; Reply, dated July 2, 2025 (ECF No. 118) ("Reply") at 8.

Respondent reacted to the Final Fees Motion on July 1, 2025. *See* Response, dated July 1, 2025 (ECF No. 117) ("Resp."). He argues that "[t]he objective evidence indicates that [P]etitioner neither began her case with a reasonable basis, nor did one emerge as her case progressed," and thus her motion must be denied. Resp. at 19. In so arguing, Respondent maintains that Petitioner has failed to establish that she has POTS or CFS—emphasizing that no provider ever diagnosed her with either condition, and that she lacked any testing consistent with the diagnostic criteria for POTS or CFS. *Id.* At best, according to Respondent, "[P]etitioner reported fatigue for short periods of time at sporadic encounters after October 31, 2018 (more than six months after vaccination), and self-reported her own opinion that she had 'features of abnormal thermoregulation along with clinical features of orthostatic hypotension' to a rheumatologist in July 2020.'" *Id.* (referencing Ex. 10 at 7). Moreover, no treating provider ever attributed Petitioner's condition to her receipt of

---

[3] In briefing the Motion for Review, Petitioner had requested the opportunity to file a reply brief, although there is no reply as a matter of right or procedure under the Vaccine Rules. After that motion was denied, Petitioner went ahead and filed the reply—leading the Court to strike it and ordering the Petitioner to Show Cause why Petitioner's former counsel should not be held in contempt of court for filing a reply brief after the Court specifically denied leave to do so, and while she had a motion for reconsideration of that order pending. *See* Order, dated Dec. 27, 2024 (ECF No. 100).

[4] The common thread running through the appearance of each firm is a single attorney, who switched firms in 2022 and then withdrew from the case in 2025.

the Tdap vaccine, and that she only first reported "unusual fatigue" symptoms lasting for three weeks on October 31, 2018 - nearly six months post-vaccination. *Id.* at 23.

In addition, Respondent argues that Petitioner's claim was not supported by either medical opinion or her medical records. Resp. at 19, 20. He further submits that the *late* filing of Petitioner's Exhibit 40 (a case report describing a case of a 40-year-old female who presented with symptoms suggestive of POTS following receipt of a dTap booster vaccination one week prior) should be given no weight in determining whether the claim had reasonable basis. *Id.* at 21–22. However, should I take this item of literature into account, Respondent nevertheless maintains that "this single case report does not satisfy [P]etitioner's burden to establish reasonable basis for her claim." *Id.* at 22.

Petitioner filed a reply, insisting that her claim had both good faith and reasonable basis. Reply at 1. As support for reasonable basis, Petitioner notes that she provided extensive medical records and briefing to bulwark the main points of her case. For example, she maintains that her claimed injuries—POTS or CFS—can reflect an autoimmune response to an immune-mediated trigger, and that vaccination in general, as well as the specific vaccine she received, has been linked to her alleged injuries. *Id.* at 2.

## I.    **Applicable Legal Standards**

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. No. 99-908, at 22 *preprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases—but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E.J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[5] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("*Cottingham I*"). The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.*, 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345–46. "This formulation does not appear to define reasonable basis so much as set its outer bonds." *Cottingham v. Sec'y of Health & Hum. Servs.*, 159 Fed. Cl. 328, 333 (Fed. Cl. 2022) ("*Cottingham II*"), *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira*, the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

---

[5] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]here 'good faith' requirement … focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

4

## II.    Fees are Appropriate for this Matter

Here, and despite its readily-evident weakness, the claim had sufficient objective evidence to support Petitioner's claim. In so finding, I emphasize the exceedingly-low bar that governs the reasonable basis inquiry. A finding of reasonable basis requires a mere scintilla of objective evidence to support a feasible claim—a burden that is much lower than the preponderance of evidence standard required for entitlement. It is also well-established that an expert report addressing causation is not necessary to show that a claim had reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379–80 (Fed. Cir. 2021). Further, as the Federal Circuit explained in *James-Cornelius*, affidavits or sworn statements may themselves stand as objective evidence that can be invoked in support of reasonable basis (as well as in establishing entitlement). *Id.* at 1380–81.

The evidence filed herein shows that Petitioner received the subject vaccine on April 4, 2018. Pet. at 1. Over the next several months, Petitioner continued to report to her primary care physician ("PCP") complaining of chronic headaches and pain in her knee, ankle, and hand from jujitsu. Decision at 3. And nearly six months post-vaccination, Petitioner returned to her PCP and reported three weeks of unusual fatigue. *Id.*

Respondent correctly observes that, based on the medical records and despite dozens of different evaluations by different specialists, Petitioner was never diagnosed with POTS or CFS. But I can still find that Petitioner, *if only barely*, established a reasonable basis for her claim on the basis of objective medical records establishing that she sought treatment for difficult-to-explain symptoms. This is not a case where it is readily evident from the record that Petitioner had either nothing close to the alleged condition, or some other explanation clearly existed for it.

In addition, I note that although during the course of litigating the matter I expressed reasoned skepticism (based on my experience with comparable cases involving POTS) that the claim could succeed, I permitted Petitioner to attempt to meet my doubts with independent evidence. Of course, Petitioner utterly failed to do so—but I am reluctant to equate Petitioner's inability to establish grounds for entitlement with whether there was any legal possibility *before* that she could succeed. (I do not, however, deem her subsequently-filed literature or evidence to bulwark the claim's validity after the fact—and the time to file such evidence (unless it is truly brand-new) is while the claim is still pending, not on appeal or in fees litigation. *See* Vaccine Order at 14).

My determination that the case possessed a modicum of reasonable basis sufficient for a fees award does not mean I am forestalled from *reducing* the fees to be awarded. As noted below, I will do so in this case, which was never likely to succeed, and which was ultimately pursued to an unnecessary degree, resulting in a waste of judicial resources. Counsel who worked on this matter past and present must also going forward confront this fact: they have been repeatedly unable to prove that certain covered vaccines (HPV and not Tdap) can cause POTS; they are not

likely to do so in the future absent new scientific discoveries; and any such future cases they file despite this notice will result in swift dismissal *and* a finding the claim lacked reasonable basis.

### III.    Calculation of Attorney's Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S., 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Program cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception. *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorneys and support staff, based on the years work was performed:

| | **2021** | **2022** | **2023** | **2024** | **2025** |
|---|---|---|---|---|---|
| **Andrew Downing (Attorney)** | $385.00 | $445.00 | $445.00 | $485.00 | $485.00 |
| **Ann Allison (Attorney)** | -- | -- | $415.00 | $435.00 | -- |
| **Courtney Jorgenson (Attorney)** | $275.00 | $325.00 | $345.00 | $375.00 | $400.00 |
| **Paralegals** | $135.00 | $135.00 | $155.00 | $175.00 | $195.00 |

Interim Fees Mot. at 15–16; Final Fees Mot. at 2–6.

The attorneys at Petitioner's former counsel's firm, as well as her current counsel's firm, have been recognized to practice in forum, thus, entitling them commensurate rates established in *McCulloch*. *See Rossiter v. Sec'y of Health & Hum. Servs.*, No. 20-1888V, 2023 WL 3778899, at *2 (Fed. Cl. Spec. Mstr. June 2, 2023). Accordingly, I will utilize the proposed rates.

Time billed to this matter, however, is another thing entirely. Simply put, even if this case had a modicum of reasonable basis, it was wasteful and improvident for counsel to incur *six figures* in fees and costs pursuing it. Counsel was well aware of the many prior decisions I had issued involving POTS, and the need to identify new medical or scientific evidence supporting a Tdap-POTS link *if* the case was to proceed. Not only did Petitioner fail to do so, however, but she then pursued an appeal which (due to counsel's profligate filing conduct and disregard for the Vaccine Rules – not to mention the Orders of the Court) resulted in a partial fees sanction.[6] *See* Vaccine Order at 14–16 (stating that any attorneys' fees and costs incurred in relation to the filing of Petitioner's motion for reconsideration, stricken reply brief, or her response to the Court's show cause order shall be denied). Otherwise, Petitioner should have had well in hand what medical or scientific authority supported her claim *well before* I first raised questions about the claim's basis in October 2023 (ECF No. 68)—and certainly by the time of the Motion for Review, which was briefed a year later.

It is recognized that special masters have the discretion to make across-the-board fees reductions in appropriate circumstances—not only in the interests of avoiding fees litigation becoming a secondary dispute, but in order to ensure reasonable time is spent on a matter. *Humphries v. Sec'y of Health & Hum. Servs.*, No. 17-288V, 2021 WL 5444097, at *5 (Fed. Cl. Spec. Mstr. Oct. 26, 2021) ("Special masters need not engage in a line-by-line review of fees requests when making reductions, and in fact are permitted to make fair across-the-board cuts." Cases unlikely to succeed may have reasonable basis, but that does not mean excessive time spent on such a case is inherently *reasonable.* And by and large, cases alleging POTS as a vaccine injury are not reasonably-advanced (and will remain so unless and until new medical research establishes a reliable link).

For these reasons, a substantial percentage cut is called for in this case. I accordingly reduce all time billed to the matter by **50 percent**. Application of the foregoing reduces the amount of fees to be awarded herein by **$39,939.75**[7] for Petitioner's *former* counsel; and by **$8,920.75**[8] for Petitioner's *current* counsel of record.

I recognize that the percentage discount I have employed is larger than usual. But I deem it appropriate—especially in a case that barely meets the reasonable basis standard. Counsel improvidently pursued this matter, despite my warnings along the way that it likely was not

---

[6] Taking into account the instructions set forth in the Vaccine Order, 42.7 hours (24 hours of work performed at $375.00/hour; 17.9 hours of work performed at $485.00/hour; and 0.8 hours of work performed at $175.00/hour) were billed in relation to Petitioner's Motion for Reconsideration, Petitioner's stricken Reply Brief, and Petitioner's Response to the Court's Show Cause Order. This results in a reduction of **$17,821.50**, and I have subtracted this amount from the total remainder that forms the basis for my discounted, final fees and costs award.

[7] This amount is calculated as ($97,701.00 - $17,821.50) = $79,879.50; ($79,879.50 x 0.50) = $39,939.75.

[8] This amount is calculated as ($17,841.50 x 0.50) = $8,920.75.

tenable. *See* Scheduling Order, dated Oct. 2, 2023 (ECF No. 68). And then appeal was taken on top of that. It is an abuse of the Program's exceedingly-generous fees provisions to run up fees and costs in the six figures on a claim that appears facially weak, and then only proves to be so. The risk for taking on this work is properly placed on counsel, who will hopefully in future matters exercise greater care when pursuing flimsy causation theories based on limited objective proof.

### IV.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 67, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioner fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issued. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

#### (A) Downing, Allison & Jorgenson Costs

Petitioner seeks $1,800.58 in outstanding costs, including the filing fee, medical record retrieval costs, and postage costs. ECF No. 102-1 at 22–21; 89–90. All are commonly incurred in the Vaccine Program, and are reasonable herein.

#### (B) Siri & Glimstad, LLP Costs

Petitioner also seeks $1,976.92 in outstanding costs, including court filing fees, legal research charges, PACER costs, and costs associated with travel for oral argument. ECF No. 115-1 at 5. Such costs are typical in Program cases, and are reasonable herein.

#### CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a fees award, I **GRANT IN PART** Petitioner's Motion for Attorneys' Fees and Costs. I award a total of **$52,638.00**, reflecting (a) $41,740.33 in attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's *former* counsel, Andrew D. Downing's, IOLTA account for prompt disbursement; and (b) $10,897.67 in attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel of record, Courtney C. Jorgenson's, IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[9]

**IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.